| | |
|---|---|
| CLINTON CARAWAY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THEODIS BECK, Secretary of Correction, )<br>North Carolina Department of Correction, *et al*. )<br>)<br>Defendants. )<br>) | **ORDER** |

This Cause comes before the Court upon a Motion to Dismiss (DE-27) by Defendants Michael D. Murphy, Eurgia Land, David Hinds, and Mortimer Jagust (collectively, "Physician Defendants") and supporting memorandum (DE-28), to which Plaintiff responded (DE-30) and to which Physician Defendants then replied (DE-33). In addition, Physician Defendants filed an Answer (DE-39). Defendants Theodis Beck, Paula Smith, Paula Barnette, Linda Brogden, Linda Shanton, Debra Chestnutt, Mildred Moore, Deborah Wallace, Jennifer Chambers, Amanda Turner, Kitani Wilson, Evelyn Cannon, Jannie Holloman, Barbara Clayborne, Sharon Riddick, Philip Stover, Abhay Agarwal, and the North Carolina Department of Correction (collectively, "Certain Named Defendants") have likewise filed a Motion to Dismiss (DE-24) and supporting memorandum (DE-25), to which Plaintiff responded (DE-31). Pursuant to 28 § U.S.C. 636(c) and Rule 73 of the Federal Rules of Civil Procedure, jurisdiction of this matter was transferred to the undersigned by order of Chief Judge Louise Wood Flanagan upon consent by the parties (DE-37).

Plaintiff, a former inmate of the North Carolina Department of Correction ("DOC"), filed a complaint under 42 U.S.C. § 1983 alleging that Physician Defendants and Certain Named Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Duplin Correctional Center ("Duplin") in Kenansville, Duplin County, North Carolina, and at Greene Correctional Institution ("Greene") in Maury, Greene County, North Carolina (DE-1). Physician Defendants and Certain Named Defendants ask this Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can granted. The Motions to Dismiss are ripe for adjudication and are, for the reasons stated herein, granted.

## I. FACTUAL BACKGROUND

On the morning of November 21, 2006, while incarcerated at Duplin, Plaintiff dislocated his left shoulder. (Complaint, DE-1, ¶¶ 35, 108) Mildred Moore, L.P.N. ("Nurse Moore") responded to the emergency medical call at Plaintiff's dormitory. (*Id.* at ¶ 35) Plaintiff had been "vomiting in trash cans" and complained of pain radiating from his left shoulder to his left arm. (*Id.*) On a scale of zero to ten, Plaintiff rated his pain an "8," for which Nurse Moore gave him ibuprofen. (*Id.* at ¶¶ 35, 37) Michael Murphy, M.D. ("Dr. Murphy"), the supervising physician at Duplin, was advised of Plaintiff's condition. (*Id.* at ¶ 35) However, neither he nor any other physician or physician assistant examined Plaintiff that day. (*Id.* at ¶ 36) Over the ensuing weeks, Plaintiff submitted several "Sick Call Appointment Request" forms seeking treatment of his shoulder injury. (*Id.* at ¶¶ 37-42) Staff nurses met with Plaintiff on November 25 and 30, and December 23, at which appointments Plaintiff complained of continuous pain in his left shoulder and arm and difficulty sleeping. (*Id.*) The nurses gave Plaintiff ibuprofen for his pain. (*Id.*) At his December 23rd appointment, nurses noted there was decreased range of

motion in Plaintiff's left shoulder that interfered with his ability to perform the normal activities of daily living. (*Id.* at ¶ 42) The nurses decided to continue Plaintiff's regimen of ibuprofen "per protocol" and "[r]efer to provider for further assessment and treatment." (*Id.*)

On December 28, Plaintiff met briefly with David Hinds, P.A. ("P.A. Hinds"), a physician assistant providing medical care at Duplin. (*Id.* at ¶¶ 8, 44) P.A. Hinds did not physically examine Plaintiff's shoulder but ordered an x-ray, prescribed Percogesic and Flexerill, and submitted a utilization review request for Plaintiff to receive physical therapy. (*Id.* at ¶¶ 43-44) In order for an inmate to receive specialty medical consultations or treatment, such as physical therapy, the DOC's Utilization Review Board must first approve a utilization review request submitted by the inmate's treating physician or physician assistant. (*Id.* at ¶¶ 27-28) The Utilization Review Board approved P.A. Hind's request for Plaintiff to receive physical therapy. (*Id.* at ¶ 56) Meanwhile, the x-ray of Plaintiff's shoulder revealed "mild degeneration" and a "[p]ossible glenohumeral dislocation." (*Id.* at ¶ 45) The radiologist noted, however, that "clinical correlation" and a "Y view" x-ray were needed to confirm the possible shoulder dislocation. *Id.* The radiology report was placed in Plaintiff's medical chart at Duplin, but Dr. Murphy did not review it, nor did he order further x-rays. (*Id.* at ¶ 46)

Plaintiff continued to suffer severe pain in his left arm and shoulder and visited staff nurses on January 5 and February 2, 2007, complaining of worsening pain, inability to sleep, and inability to perform his duties. (*Id.* at ¶¶ 48-54) He also met again briefly with P.A. Hinds on January 11, 2007, but P.A. Hinds did not conduct a physical examination of Plaintiff's shoulder. (*Id.* at ¶ 50) At his February 2nd appointment, staff nurses noted that Plaintiff could not "raise [his] extended left arm at all" and that he should be added to the "MD list next available visit." (*Id.* at ¶ 54)

3

On February 6, 2007, physical therapist Tony Pigford ("Pigford") evaluated Plaintiff at Duplin General Hospital pursuant to the approved utilization review request submitted by P.A. Hinds. (*Id.* at ¶ 56) Pigford noted Plaintiff's left shoulder was weak with muscular atrophy and had limited range of motion interfering with Plaintiff's ability to perform the activities of daily living. (*Id.* at ¶ 57) Pigford stated in his evaluation report that Plaintiff "would benefit from having an orthopedic evaluation of his [left] shoulder." (*Id.*) P.A. Hinds reviewed Pigford's evaluation report. (*Id.* at ¶ 58)

On February 16, 2007, Mortimer Jagust, M.D. ("Dr. Jagust"), a physician filling in for Dr. Murphy as Duplin's supervising physician, requested an orthopedic consultation for Plaintiff. (*Id.* at ¶¶ 9, 61) Dr. Jagust did not examine Plaintiff before requesting the orthopedic consultation. (*Id.* at ¶ 61) The utilization review request stated as follows, under the section asking for justification: "[Plaintiff] fell on L shoulder on 01/11/07. He had a PT evaluation and the physical therapist reports muscle atrophy L should[er] with limited LOM; can't do ADL's. He is recommending an ortho consult." (*Id.* at ¶ 62) The request incorrectly stated the date of Plaintiff's injury as January 11, 2007, rather than November 21, 2006, and did not include information regarding the x-ray report indicating a possible shoulder dislocation. (*Id.*) The Utilization Review Board denied the request for an orthopedic consultation on March 16, 2007, for the stated reason of "Guidelines not met" and with the additional comment: "Please do [physical therapy] first[.]" (*Id.* at ¶ 63) Neither Dr. Jagust, Dr. Murphy, P.A. Hinds, nor any other medical care provider at Duplin appealed the denial of this utilization review request. (*Id.*)

Plaintiff visited staff nurses on February 15, 23, and March 5, with worsening symptoms of pain, stiffness, numbness, and tingling in his left arm and shoulder, for which he was given ibuprofen. (*Id.* at ¶¶ 60, 64, 66, 67, 70) Plaintiff also attended nine physical therapy sessions

4

with Pigford at Duplin General Hospital beginning on March 1, 2007.  (*Id.* at ¶¶ 72-73)  Plaintiff did not perform the exercises at his ninth physical therapy session because he could not tolerate the pain.  (*Id.* at ¶ 73)  Following the ninth session, Pigford recommended holding further exercises.  (*Id.*)  Dr. Murphy, Dr. Jagust, and P.A. Hinds did not review Plaintiff's physical therapy records from Duplin General Hospital.  (*Id.* at ¶ 74)

On March 27, 2007, DOC officials transferred Plaintiff from Duplin to Greene.  (*Id.* at ¶ 75)  Three days later, on March 30, Plaintiff visited the Greene staff nurses, who continued his ibuprofen.  (*Id.* at ¶ 80)  Later that day, a utilization review request was submitted on behalf of Plaintiff seeking approval for a physical therapy consultation at Lenoir Memorial Hospital.  (*Id.* at ¶ 82)  The utilization review request stated that "plaintiff needs ongoing physical therapy for strengthening and ROM needed for shoulder[,] was having PT already at Duplin General in March[.]"  (*Id.*)  No physician or physician assistant examined Plaintiff before submission of the utilization review request, which the Utilization Review Board approved.  (*Id.* at ¶¶ 82-83)

Plaintiff met with physical therapist Ann Marie Crose ("Crose") of Lenoir Memorial Hospital for his approved physical therapy evaluation on April 18, 2007.  (*Id.* at ¶ 88)  Crose stated in her evaluation report that "[p]rior to [physical therapy] initiation of treatment, further MRI imaging of [left] shoulder is indicated . . . Articular damage suspected as well on superior surface of humeral head."  (*Id.*)  Eurgia Land, M.D. ("Dr. Land"), the supervising physician at Greene, reviewed Crose's physical therapy evaluation report.  (*Id.* at ¶¶ 7, 89)  Dr. Land thereafter submitted a utilization review request on Plaintiff's behalf seeking approval for physical therapy services at Lenoir Memorial Hospital.  (*Id.* at ¶ 90)  The Utilization Review Board approved the request, and Plaintiff began physical therapy on April 19.  (*Id.*)

After a physical therapy session at Lenoir Memorial Hospital on May 4, Sharon Kilpatrick, a physical therapist assistant, noted that "Therapist recommends [Plaintiff] to have orthopedic consultation due to persistent pain." (*Id.* at ¶ 95) Dr. Land examined Plaintiff on May 7, 2007, and submitted a utilization review request for an orthopedic consultation the same day. (*Id.* at ¶¶ 96-97) While the request was pending, Plaintiff's physical therapist Crose sent a letter to Dr. Land advising him to either hold or discontinue physical therapy "due to increased pain & neurologic symptoms and limited progress." (*Id.* at ¶ 100) Crose believed an orthopedic consultation was necessary "for further imaging of soft tissues of shoulder joint [and] discussion of surgical intervention." (*Id.*) Dr. Land reviewed the letter from Crose on May 17, but Plaintiff nevertheless attended physical therapy the following day. (*Id.* at ¶¶ 101-02) Dr. Land examined Plaintiff again on May 30 and concluded Plaintiff suffered from degenerative joint disease. (*Id.* at ¶ 103) He prescribed Elavil and scheduled a two-month follow-up appointment with Plaintiff. (*Id.*)

On June 1, 2007, the Utilization Review Board denied Dr. Land's request for an orthopedic consultation for the reason "Guidelines not met" and with the comment "This can safely wait until his release, and/or there is insufficient time left on his sentence to arrange for this. Please have him contact his private physician after his release." (*Id.* at ¶ 98) Dr. Land did not appeal the denial of his utilization review request. (*Id.*)

The DOC released Plaintiff from incarceration in August 2007. (*Id.* at ¶ 99) Following his release, Plaintiff promptly consulted an orthopedic surgeon who ordered a series of x-rays that revealed Plaintiff's shoulder dislocation. (*Id.* at ¶ 105) Plaintiff has now undergone several surgeries, including partial shoulder replacement, but continues to suffer from severe pain, decreased function, and diminished range of motion in his left shoulder. (*Id.* at ¶ 107)

## II. ANALYSIS

### A. Standard for a Motion to Dismiss Under Rule 12(b)(6)

Plaintiff's complaint seeks redress under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment's prohibition against cruel and unusual punishment (DE-1). Physician Defendants and Certain Named Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted (DE-24, DE-27). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," *id.* at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 570. Careful examination of Plaintiff's

Complaint is therefore necessary to determine whether the allegations set forth sufficient facts that, when taken as true, establish a plausible claim under 42 U.S.C. § 1983.

### B. Deliberate Indifference To An Inmate's Serious Medical Needs

The Eighth Amendment protects inmates with respect to the conditions under which they are confined and the treatment they receive in prison, including the adequacy of the medical care that the prison provides. *See* Estelle v. Gamble, 429 U.S. 97, 102-04 (1976); De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). Deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See* Estelle, 429 U.S. at 104; De'Lonta, 330 F.3d at 633-34. To state a claim for deliberate indifference by prison officials to a prisoner's serious medical needs, an inmate must demonstrate (1) objectively, that the medical deprivation was sufficiently serious and (2) subjectively, that the officials acted with a "'sufficiently culpable state of mind.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Waters v. Seiter, 501 U.S. 294, 298 (1991)). "[T]he [medical] need must be both apparent and serious, and the denial of attention must be both deliberate and without penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "'Deliberate indifference entails something more than mere negligence . . . .'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Id.* To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Thus, "mere negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmate's proper medical

8

care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

### C. Application of Law to Facts: Physician Defendants' Motion to Dismiss

Plaintiff alleges Physician Defendants were deliberately indifferent to his medical needs by providing such substandard medical care "as to amount to no medical care at all." (Complaint, DE-1, at ¶ 111) Specifically, Plaintiff alleges Physician Defendants failed to: conduct proper physical examinations; order appropriate diagnostic tests; refer Plaintiff to appropriate medical specialists; submit correct and thorough utilization review requests; appeal utilization review decisions that were contraindicated for Plaintiff; review Plaintiff's medical chart and follow up on sick call appointments; and follow up on and implement recommendations by outside physical therapists and radiologists.

Even taken in the light most favorable to him, these allegations fail to state a claim against Physician Defendants for deliberate indifference in violation of the Eighth Amendment. Assuming *arguendo* that his shoulder injury qualifies as a "serious medical need," Plaintiff fails to demonstrate that Physician Defendants knowingly disregarded his need for medical treatment. To the contrary, the Complaint shows that Plaintiff received immediate medical attention following his injury on the morning of November 21, 2006 at Duplin. Nurse Moore responded to the emergency call before 9:15 a.m. and administered a course of ibuprofen to treat Plaintiff's pain. Dr. Murphy was informed of Plaintiff's condition. Although Physician Defendants did not examine him on the day of his injury, Plaintiff nowhere alleges that Physician Defendants were required to do so, or that Physician Defendants' failure to examine him that day was unreasonable, particularly given the subjective nature of Plaintiff's reported level of pain. Given the lack of distinctive symptoms, Nurse Moore and Physician Defendants could have reasonably

believed that Plaintiff had simply strained or otherwise only moderately injured his shoulder such that no further medical intervention was warranted. Indeed, it appears unreasonable to imply, as Plaintiff does, that prison physicians should personally conduct a physical examination of every inmate following an emergency call, regardless of the reported symptoms.

During the months following his injury, Plaintiff received additional medical attention for his shoulder, including approximately seven "sick call" visits with health care providers at Duplin, four "sick call" or medical clinic visits with health care providers at Greene, more than nine physical therapy appointments, seven utilization review requests submitted by various health care providers, an x-ray, and prescriptions for various medications, among other treatment. Insofar as Plaintiff alleges the medical attention Physician Defendants rendered was not "proper" or even contraindicated, his Complaint may state a claim of medical malpractice. *See* Wright, 766 F.2d at 849. Malpractice does not constitute deliberate indifference, however. Miltier, 896 F.2d at 852; *see also* Wright, 766 F.2d at 849 (stating that "[s]ection 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law").

Plaintiff emphasizes that no physician or physician assistant conducted a physical examination of his shoulder until May 7, 2007, approximately five and a half months after his injury on November 21, 2006. However, the Complaint shows that Plaintiff received consistent medical attention throughout this time period, including two visits with P.A. Hinds. Although P.A. Hinds did not physically examine Plaintiff's shoulder, Plaintiff fails to demonstrate that a physical examination of his shoulder, rather than an oral examination, was medically necessary to diagnose his condition, or that the failure to conduct a physical examination during this time period was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness." Miltier, 896, F.2d at 851.  At most, Plaintiff's Complaint alleges negligence or errors in judgment made by Physician Defendants.

> But the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences. This is precisely why the Supreme Court has seen fit to stress that deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety."

Grayson, 195 F.3d at 695-96 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Because Plaintiff fails to show Physician Defendants knowingly disregarded his shoulder injury, the undersigned dismisses Plaintiff's Complaint against Physician Defendants.

### D. Application of Law to Facts: Certain Named Defendants' Motion to Dismiss

Plaintiff's Complaint also sets forth claims against Paula Barnette, Linda Brogden, Linda Shanton, Debra Chestnutt, Mildred Moore, Deborah Wallace, Jennifer Chambers, Amanda Turner, Sharon Riddick, and Kitani Wilson, who are nurses employed at Duplin, and against Evelyn Cannon, Jannie Holloman, and Barbara Clayborne, who are nurses employed at Greene. Certain Named Defendants also include defendants Theodis Beck, Secretary of the DOC; defendant Paula Smith, M.D., Director of Health Services at the DOC; Defendant Abhay Agarwal, M.D., Deputy Director of Health Services at the DOC and a member of the DOC's Utilization Review Board; and defendant Philip Stover, M.D., a member of the DOC's Utilization Review Board.

### Nurses

Like Plaintiff's allegations against Physician Defendants, the allegations against the nurses at Duplin and Greene fail to demonstrate deliberate indifference to Plaintiff's serious medical need.  Plaintiff alleges no facts establishing that the nurses at Duplin and Greene knowingly disregarded Plaintiff's shoulder injury.  Rather, the allegations show that the nurses at

11

Duplin and Greene consistently attended to his complaints, supplied him with pain medications, documented his medical treatment, apprised other medical providers of his condition, and carried out all treatment orders. As with Physician Defendants, to the extent Plaintiff complains he received improper nursing care, his claims ground in negligence and therefore do not rise to the level of deliberate indifference. Miltier, 896 F.2d at 852. The claims against Paula Barnette, Linda Brogden, Linda Shanton, Debra Chestnutt, Mildred Moore, Deborah Wallace, Jennifer Chambers, Amanda Turner, Sharon Riddick, and Kitani Wilson, Evelyn Cannon, Jannie Holloman, and Barbara Clayborne are accordingly dismissed.

**Supervisory Actors**

Plaintiff's Complaint names the DOC and Secretary Beck, Director Smith, and Deputy Director Agarwal as defendants. However, the DOC and state officials acting in their official capacities are not "persons" under 42 U.S.C. § 1983 and therefore not subject to liability. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Thus, Plaintiff's Complaint against the DOC and Secretary Beck, Director Smith, and Deputy Director Agarwal acting in their official capacities fails and must be dismissed.

Plaintiff's claims against Secretary Beck, Director Smith, and Deputy Director Agarwal acting in their individual capacities similarly fail. Except to the extent that he alleges Dr. Agarwal participated in his utilization review, Plaintiff does not claim Secretary Beck, Dr. Smith, or Dr. Agarwal had any personal knowledge of his shoulder injury. Instead, Plaintiff alleges Secretary Beck, Dr. Smith, and Dr. Agarwal were deliberately indifferent to his serious medical needs because of their general supervisory roles over prison medical care and "by failing to promulgate and implement appropriate policies and procedures governing the provision of health services to inmates." (Complaint, DE-1, at ¶ 127)

In order to establish supervisory liability under 42 U.S.C. § 1983 based upon constitutional violations inflicted by subordinates, Plaintiff must demonstrate that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." Miltier, 896 F.2d at 854 (citations omitted). Deliberate indifference to a serious medical need on the part of the subordinate physicians, standing alone, does not state a claim for supervisory liability. *See id.*

Here, Plaintiff does not allege that Secretary Beck, Dr. Smith, or Dr. Agarwal failed to provide or interfered with Plaintiff's medical care. Plaintiff must therefore show that Secretary Beck, Dr. Smith, and Dr. Agarwal "tacitly authorized" or were "indifferent" to constitutional violations by prison physicians. To do so, Plaintiff must demonstrate Secretary Beck, Dr. Smith, and Dr. Agarwal knew that Plaintiff "faced a pervasive and unreasonable risk of harm from some specified source" but took no corrective action. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Id.* Absent allegations that Secretary Beck, Dr. Smith, and Dr. Agarwal knew prison physicians were rendering constitutionally inadequate medical care, or that the policies and procedures governing prison medical care were so inadequate as to create a "pervasive and unreasonable risk of harm" to prisoners, Plaintiff's Complaint necessarily fails. *Id.* As Plaintiff's Complaint fails to establish that he received constitutionally inadequate medical care, and as there are no allegations detailing Secretary Beck, Dr. Smith, and Dr. Agarwal's

13

knowledge of any such inadequacies, the undersigned dismisses Plaintiff's Complaint against Secretary Beck, Dr. Smith, and Dr. Agarwal.

### Utilization Review Board Members

Finally, Plaintiff's Complaint sets forth claims against Dr. Agarwal and Dr. Philip Stover for their roles as members of the Utilization Review Board who twice denied requests by Plaintiff's medical care providers for an orthopedic consultation. Board members denied the first utilization review request for an orthopedic consultation because they believed that physical therapy should first be attempted. Board members denied the second utilization review request because there was insufficient time left to schedule an orthopedic consultation before Plaintiff's release, and because Plaintiff's need for an orthopedic consultation did not appear to be urgent. These allegations fail to demonstrate deliberate indifference by Board members to Plaintiff's injury. At best, they reveal a legitimate disagreement between Board members and Plaintiff's medical care providers over proper medical care for Plaintiff. Absent exceptional circumstances, however, such allegations fail to state a claim under 42 U.S.C. § 1983. *See* Wright, 766 F.2d at 849. Board members could reasonably assume that, if exceptional circumstances made it inadvisable for Plaintiff to wait until his release to consult an orthopedist, the requesting physician, Dr. Land, would have appealed the denial. Since by Plaintiff's own admission Dr. Land did not appeal the denial, Plaintiff's allegations do not state facts from which deliberate indifference can be inferred. The claims by Plaintiff against Dr. Stover and Dr. Agarwal are accordingly dismissed.

### III. CONCLUSION

In summary, even taken in the light most favorable to him, Plaintiff's Complaint fails to state a claim for deliberate indifference in violation of the Eighth Amendment because the

allegations in his Complaint fail to demonstrate that Physician Defendants or Certain Named Defendants knowingly disregarded Plaintiff's need for treatment. As Plaintiff fails to establish a claim for deliberate indifference upon which relief may be granted, Physician Defendants' and Certain Named Defendants' Motions to Dismiss are hereby GRANTED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Monday, August 23, 2010.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE